IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES K. AMOAKO,

    Petitioner,                    No. 2:12-cv-1130 KJN P

    vs.

J. BUILTEMAN, et al.,

    Respondents.               ORDER

_____/

I. <u>Introduction</u>

    Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties consented to proceed before the undersigned for all purposes. <u>See</u> 28 U.S.C. § 636(c).

    Petitioner challenges his 2009 conviction on charges of felony spousal abuse, threatening to commit a crime that would result in death or great bodily injury, assault with force likely to produce great bodily injury, unlawful sexual penetration, and violating protective orders. On August 20, 2009, petitioner was sentenced to 13 years and 8 months prison. Petitioner contends that the trial court prejudicially erred in denying his motion for mistrial after the victim testified that petitioner "forced sex" on her, and that the trial court was required to instruct the jury on misdemeanor battery of a spouse, a lesser included offense to felony spousal abuse. After

careful review of the record, this court concludes that the petition should be denied.

## II. Procedural History

On August 20, 2009, petitioner was convicted of felony spousal abuse, threatening to commit a crime that would result in death or great bodily injury, assault with force likely to produce great bodily injury, unlawful sexual penetration, and violating protective orders.

Petitioner filed a timely appeal, and on December 28, 2011, the California Court of Appeal for the Third Appellate District affirmed the conviction. (Respondent's Lodged Document ("LD") 6.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on March 14, 2012. (LD 8.)

## III. Facts and Procedural Background[1]

The opinion of the California Court of Appeal contains a factual summary of petitioner's offenses, and a procedural background:

> The charges against [petitioner] stem from an altercation he had with V.B. on May 20, 2008. At [petitioner's] trial, V.B. testified in detail about this altercation. In addition, the jury heard evidence of other instances where [petitioner] engaged in assaultive and/or threatening conduct toward women.
>
> Ja'Nay Lott, [petitioner's] former spouse, was the prosecution's first witness at trial. [Petitioner] and Ja'Nay were married from 2005 until 2006. In February 2004, [petitioner] argued with Ja'Nay about her desire to drive to work separately. [Petitioner] attempted to choke Ja'Nay. She hit [petitioner] with a coffee cup. [Petitioner] then slapped, punched, kicked, and stomped on Ja'Nay in the hallway. Ja'Nay entered her car and [petitioner] dragged her out, threw her down on the front lawn, and continued to stomp on and kick Ja'Nay. Ja'Nay sustained multiple bruises and a black eye.
>
> Later, in September 2005, [petitioner] quarreled with Ja'Nay and then showed up at her work. As Ja'Nay walked out of work for the day, [petitioner] chased her on foot through the parking lot. Ja'Nay arrived safely at her car and locked the doors. [Petitioner] told

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Amoako, No. C062817 (Dec. 28, 2011), a copy of which was lodged by respondent on December 7, 2012 (LD 6).

Ja'Nay that he was her husband and she would be with him "by choice or by force."

[Petitioner] married V.B. in February 2007. They lived together for two years before they were married, and they separated a few weeks after they were married.

On May 20, 2008, V.B. came home at approximately 8:15 to 8:30 a.m. after having spent the night elsewhere. V.B. explained her decision to sleep away from home:

"[PROSECUTOR:] Had you stayed the night in your home that preceding evening the 19th?

"[V.B.:] No. [¶] . . . [¶]

"[PROSECUTOR:] And so you did not stay the night in your home; you stayed elsewhere?

"[V.B.:] Correct.

"[PROSECUTOR:] And how long had you -- how many days had you stayed the night elsewhere preceding May 20th?

"[V.B.:] It was a couple [of] days. It was on and off for the last couple weeks before that.

"[PROSECUTOR:] It was not the first time you had stayed a night away from your home?

"[V.B.:] No.

"[PROSECUTOR:] And why did you stay the night or nights away from your home?

"[V.B.:] [Petitioner] had threatened me numerous of times, but the main reason is I had to go to work, and he would like take my vehicle and I would not have a ride to work. And like three nights before that he had made me -- forced sex on me when I did not want it.

"[PROSECUTOR:] Okay. So because of physical abuse and you said taking your keys --"

At this juncture, defense counsel asked to approach the bench and the trial court held a sidebar with counsel.

In the sidebar, based on V.B.'s testimony that [petitioner] "forced sex on me," [petitioner] requested a mistrial, which the trial court tentatively denied. The trial court, however, indicated it would allow [petitioner] to further argue the mistrial motion outside the

3

jury's presence later that day. After the sidebar, the trial court addressed the jury: "Ladies and gentlemen, as you noted already this morning, some times things come up during the course of the trial that require immediate attention which is why we have these sidebars. You shouldn't worry or speculate about why we have these sidebars, but I will just tell you it's to handle issues that pertain to the trial. [¶] I am going to strike the witness's last answer as to why she had stayed away from the house the night before and the several days before that, and I'm instructing you not to consider the answer which you obviously heard for any purposes whatsoever. [¶] [V.B.], I understand it's difficult for you to know exactly what the perimeters are of the answers you give, but I would ask you to listen as carefully as you can to the questions and try to keep your answers as close to the question as possible. Okay." V.B. nodded her head. Later, the trial court held proceedings outside the jury's presence during which the trial court further considered [petitioner's] motion for a mistrial. After hearing oral argument, the trial court denied the motion.

Continuing on with her testimony, V.B. said that when she came home on the morning of May 20, 2008, she encountered [petitioner] in the kitchen. [Petitioner] was angry that she had been elsewhere. [Petitioner] tried to hug V.B. and she pulled away. [Petitioner] reacted by "[a]gressively trying to hug" V.B. V.B. went upstairs to her bedroom.

In the bedroom, [petitioner] accused her of having sex with another man. [Petitioner] was yelling and screaming. [Petitioner] was saying things like, "It's my birthday" and "Who do you think you are," "Where have you been," and "You have been with some guy." When pressed further to elaborate on [petitioner's] language, V.B. explained that [petitioner] was saying things such as "Bitch, . . . who the fuck do you think you are? Where the hell you been? And I know you have been fucking somebody. And you have been -- you had some nigga at your best friend's house fucking him, and you don't want to fuck me." [Petitioner] grabbed V.B. by the neck, lifted her up off her feet with her legs dangling, and threw her on the bed. Once V.B. was on the bed, [petitioner] choked her. V.B. kept trying to move but [petitioner] kept gripping her neck tighter. V.B. felt like she was going to black out. At first she said words to the effect of "I can't breathe," but [petitioner's] grip became too tight and V.B. was unable to speak. [Petitioner] was leaning over V.B. and he let go of her neck and backed up slowly. [Petitioner] then uttered something like: "I'm going to kill you. But I'm not going to kill you today." [Petitioner] made a similar comment at least one other time during the incident. V.B. believed him.

V.B. dialed 911 and threw the phone, figuring that doing so would provide more time for the call to go through. [Petitioner] retrieved the phone and hung it up. The phone rang and [petitioner] told V.B. not to say anything. [Petitioner] answered and said hello.

V.B. began yelling, "Can you come?" [Petitioner] threw V.B. back on the bed. [Petitioner] pinned V.B.'s hands over her head, using his left elbow. [Petitioner] again accused V.B. of having sex with someone else and he put his right hand inside V.B.'s sweatpants. [Petitioner] placed his fingers inside the "lip area" of V.B.'s vagina. [Petitioner] then put his hand or fingers up to V.B.'s nose and demanded that she "smell it." [Petitioner] exclaimed, "You have been having sex with somebody else," "I know you have," or words to that effect.

Nevertheless, [petitioner] still wanted to have sex with V.B. because it was [petitioner's] birthday. He told her "Bitch, you're going to fuck me because it's my birthday." V.B.'s hands were still pinned over her head. According to V.B., [petitioner] had his elbow resting on the inside area of V.B.'s arm which hurt really bad. [Petitioner] leaned toward V.B. and she leaned forward and bit him. [Petitioner] responded, "Oh that feels good. Do it again." After she bit him a second time, [petitioner] started to cry. At some point during the encounter in the bedroom, V.B. attempted to leave but [petitioner] blocked her. V.B. could not pinpoint exactly when this occurred.

Eventually, the police arrived. V.B. spoke with the police and ultimately obtained a restraining order against [petitioner]. Photographs of V.B.'s physical injuries were taken by law enforcement, submitted in evidence at trial, and shown to the jury on an overhead. V.B. explained that the pictures showed she had a bruised swollen eye, some redness and scratching on the back of her neck, and a bruise on her arm.

After [petitioner's] arrest, he telephoned V.B. on several occasions, using an intermediary named Carla to make the calls. Among other things, [petitioner] called V.B. a "bitch" who had "been out there fucking," said "I wish I would never did what I did to you, and I'm sorry," and admitted violating a restraining order. At trial, the prosecutor played tape recordings of [petitioner's] telephone conversations. V.B. also testified about other prior incidents in which [petitioner] pulled her hair and threatened to throw her out the window, slapped her, jumped on the hood of a vehicle and cracked the windshield, scratched her with her keys, forced her out of a restaurant and into her car, repeatedly hit her in the face and head, threw her down, and threw her against a wall.

The parties stipulated that [petitioner] was previously convicted of inflicting injury on a spouse, cohabitant, or a fellow parent resulting in a traumatic condition.

In this case, [petitioner] was charged with committing felony spousal abuse on V.B. (§ 273.5, subd. (a); count one), threatening to commit a crime that would result in death and great bodily injury to V.B. (§ 422; count two), assaulting V.B. with force likely

5

to produce great bodily injury (§ 245, subd. (a)(1); count three), unlawful sexual penetration of V.B. (§ 289, subd. (a)(1); count four), and violating protective orders issued pursuant to the Domestic Violence Prevention Act (§ 273.6, subd. (a); counts five through ten). In connection with the first count, as an enhancement, it was alleged that [petitioner] had a prior domestic violence conviction.

The jury found [petitioner] guilty on all charges and the trial court found true the prior domestic violence conviction allegation. As to counts one, two, and four, the trial court sentenced [petitioner] to an aggregate prison term of 13 years 8 months (five years on count one, eight months on count two, and eight years on count four, consecutive). On count three, the trial court imposed the middle term of three years but stayed the sentence pursuant to section 654. FN2

> FN2. At the oral pronouncement of judgment, the trial court imposed the "midterm" on count three. The trial court, however, misspoke when it stated (or the reporter incorrectly transcribed the judge's words and typed) that the midterm was "two years" instead of three. (§ 245, subd. (a)(1).) The abstract of judgment correctly specifies three years as the midterm on count three. We believe the abstract accurately reflects the trial court's intent. Accordingly, to harmonize the trial court's oral pronouncement of judgment with the abstract, we deem the oral pronouncement as imposing the midterm of three years on count three, thus rectifying the trial court's (or reporter's) "clerical error." (See People v. Schultz (1965) 238 Cal.App.2d 804, 807-808 [clerical errors, i.e., errors "inadvertently made" as opposed to errors made "as the result of the exercise of judgment," can be remedied at any time, whether the clerical error was made by the clerk or the trial court itself].)

The trial court imposed jail sentences on counts five and six that were equivalent to [petitioner's] presentence credits. Concurrent jail sentences were imposed for counts seven, eight, nine and ten, so that [petitioner's] credits were "used up" on counts five through ten.FN3

> FN3. [Petitioner] is not entitled to an increase in presentence conduct credit because he was convicted of serious felonies. (§§ 422, 1192.7, subd. (c)(38), 289, subd. (a)(1), 1192.7, subd. (c)(25), 4019, former subds. (b)(2) & (c)(2) [as amended by Stats.2009, 3d Ex.Sess.2009-2010, ch. 28, § 50], former 2933, subd. (e)(3) [as amended by Stats.

6

1  2010, ch. 426, § 1, eff. Sept. 28, 2010].)

2  (People v. Amoako, slip op. at 2-9.)

3  IV.  <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

7

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id., at 1097.

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable

basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

V. Petitioner's Claims

    A. Motion for Mistrial

As set forth above, petitioner claims that the trial court violated his right to due process when it did not grant his motion for mistrial after V.B. testified that petitioner "forced sex" on her.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] contends the trial court prejudicially erred in denying his motion for mistrial after V.B. testified that [petitioner] "forced sex" on her. We conclude the trial court did not abuse its discretion in denying the motion for mistrial.
>
> "In reviewing rulings on motions for mistrial, we apply the deferential abuse of discretion standard." (People v. Wallace (2008) 44 Cal.4th 1032, 1068.) "'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]' [Citation.]" ( Ibid.)
>
> In his argument to the trial court, defense counsel contended that V.B. was "clearly" referring to a "rape," and the testimony was "clearly out of bounds" and "highly inflammatory." Counsel acknowledged, however, that the prosecution was not "responsible for [V.B.] volunteering the information."
>
> The trial court agreed that V.B.'s testimony was volunteered and denied the motion, finding "no basis for a mistrial." The trial court noted that the challenged testimony was only a "portion of one sentence," it was "not very lengthy," and the jury may not have been as "attune[d]" or sensitive to it as the "experienced criminal

attorney[s]" in the room. In addition, without referencing the challenged phrase separately, the entire answer was stricken and the jury was admonished not to consider it for any purpose. Furthermore, given the evidence of other domestic violence (such as Ja'Nay's testimony) that was introduced by the time of V.B.'s challenged testimony, and given all the anticipated evidence that would be admitted, including additional instances of [petitioner's] assaultive conduct, the trial court regarded the "potential for prejudice" arising from V.B.'s challenged testimony as "almost minuscule."

[Petitioner] argues that V.B.'s "explosive accusation" of uncharged "rape" was incurably prejudicial. But as the trial court noted, V.B.'s comment was just a brief portion of a larger answer. The trial court struck the larger answer without referencing the challenged phrase separately and admonished the jury to disregard it. We assume the jury followed the admonition. (See People v. Gonzales and Soliz (2011) 52 Cal.4th 254, 292 [rejecting mistrial claim where problematic testimony was struck and the jury properly admonished].)

[Petitioner] claims the admonition was inadequate, but we disagree. "'A jury is presumed to have followed an admonition to disregard improper evidence particularly where there is an absence of bad faith[.] [Citations.] It is only in the exceptional case that "the improper subject matter is of such a character that its effect ... cannot be removed by the court's admonitions." [Citation.]'" (People v. Olivencia (1988) 204 Cal.App.3d 1391, 1404.) This is not an exceptional case. V.B. made the comment quickly, the circumstances of the alleged prior incident were unclear, and she did not elaborate further. Moreover, the numerous other incidents of [petitioner's] aggressive and assaultive behavior diluted the potential for prejudice arising from V.B.'s brief ambiguous comment. Under the circumstances, the trial court was within its discretion in concluding that the comment was not incurably prejudicial. (People v. Collins (2010) 49 Cal.4th 175, 199 [rejecting mistrial claim where volunteered testimony was "brief and ambiguous"].)

[Petitioner] nonetheless contends that V.B.'s testimony violated his Fifth and Fourteenth Amendment rights to due process and a fair trial. In support, [petitioner] cites McKinney v. Rees (9th Cir.1993) 993 F.2d 1378, 1384 (McKinney). But McKinney and similar Ninth Circuit cases state that the "admission" of "other acts" evidence violates due process when "'there are no permissible inferences the jury may draw from the evidence.'" (Windham v. Merkle (9th Cir.1998) 163 F.3d 1092, 1103, italics omitted (Windham) [quoting Jammal v. Van de Kamp (9th Cir.1991) 926 F.2d 918, 920]; McKinney, supra, 993 F.2d at p. 1384; Williams v. Stewart (9th Cir.2006) 441 F.3d 1030, 1040 (Williams).) Here the trial court did not admit V.B.'s challenged

10

>testimony. Rather, the trial court struck the testimony and admonished the jury not to consider it for any purpose. (See Williams, supra, 441 F.3d at p. 1040 [no due process violation where trial court sustained [petitioner's] objection and admonished the jury to disregard testimony].) Furthermore, a due process violation only occurs if the challenged evidence is "'of such quality as necessarily prevents a fair trial.' [Citations.]" (Windham, supra, 163 F.3d at p. 1103; McKinney, supra, 993 F.3d at p. 1384.) For the reasons already discussed, V.B.'s brief testimony is not of such quality.

(People v. Amoako, slip op. at 10-13.)

A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." Jammal, 926 F.2d at 920.  Evidence must "be of such quality as necessarily prevents a fair trial." Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).

>Even so, as the Ninth Circuit has observed:
>The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Id.  See also Greel v. Martel, 472 Fed. Appx. 503, 504 (9th Cir. 2012) ("There is likewise no clearly established federal law that admitting prejudicial evidence violates due process.").

According to these authorities, the state court's rejection of petitioner's claim that the trial court violated his right to due process in allowing the admission of overly prejudicial information does not support habeas relief under AEDPA.  The admission of V.B.'s testimony did not violate any clearly established federal law.  Moreover, petitioner has not demonstrated that the admission of the challenged evidence rendered his trial fundamentally unfair.

Furthermore, the record reflects that the reference by V.B. to the prior "forced sex" incident was brief, and shortly after her response, the trial court struck V.B.'s answer, and admonished the jury "not to consider the answer . . . for any purpose whatsoever."  (RT 107.) The court also instructed V.B. to keep her answers as close to the question as possible.  (Id.) Later, the jury was instructed that if the court "ordered testimony stricken from the record [the jury] must disregard it and must not consider that testimony for any purpose."  (Clerk's Transcript at 164.)  The jury is presumed to follow the court's instructions:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, Richardson v. Marsh, 481 U.S. 200, 208 . . . (1987), and a strong likelihood that the effect of the evidence would be "devastating" to the defendant, Bruton v. United States, 391 U.S. 123, 136 . . . (1968).

Greer v. Miller, 483 U.S. 756, 767 (1987).  On the facts of this case, the court cannot find that there was an overwhelming probability that the jury was unable to follow the instructions, or that the effect of the evidence was devastating to petitioner.

Accordingly, petitioner's first claim for relief should be denied.

B.  Lesser Included Offense

Petitioner claims that the trial court was required to instruct the jury on misdemeanor battery of a spouse, a lesser included offense to felony spousal abuse.[2]

////

---

[2] Petitioner's defense counsel did not request a jury instruction on the lesser included offense of misdemeanor battery of a spouse.  (RT 282-83.)

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] next contends that the trial court was required to instruct the jury on misdemeanor battery of a spouse, a lesser included offense to felony spousal abuse. We disagree, because the evidence was such that a jury could not have reasonably doubted whether the elements of felony spousal abuse were proven.
>
> "Instruction on a lesser included offense is required only when the record contains substantial evidence of the lesser offense, that is, evidence from which the jury could reasonably doubt whether one or more of the charged offense's elements was proven, but find all the elements of the included offense proven beyond a reasonable doubt." (People v. Moore (2011) 51 Cal.4th 386, 408-409.) "[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser included offense." (People v. Breverman (1998) 19 Cal.4th 142, 162; see also People v. Valdez (2004) 32 Cal.4th 73, 116.) We review de novo whether the trial court erred in failing to instruct on a lesser included offense. (People v. Cook (2006) 39 Cal.4th 566, 596.)
>
> The jury found [petitioner] guilty of felony spousal abuse under section 273.5, subdivision (a), which provides: "Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment."
>
> The term "traumatic condition" means "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (c) .) FN4
>
>> FN4. The trial court instructed the jury that "traumatic condition" means "a wound or other bodily injury, whether minor or serious, caused by the direct application of physical force."
>
> This court previously explained that section 273.5 is violated when the defendant inflicts even minor injury. (People v. Wilkins (1993) 14 Cal.App.4th 761, 771 (Wilkins).) Unlike other felonies, e.g., aggravated battery (§ 243, subd. (d)) which require serious or great bodily injury, the Legislature has clothed persons in intimate relationships with greater protection by requiring less harm to be

13

inflicted before the offense is committed. (Ibid.) Under the expansive reach of the statute, bruising constitutes a traumatic condition. (People v. Beasley (2003) 105 Cal.App.4th 1078, 1085; U.S. v. Hall (9th Cir.2005) 419 F.3d 980, 986.)

Misdemeanor battery on a spouse under section 243, subdivision (e)(1), is a lesser included offense to felony spousal abuse under section 273.5, subdivision (a). (People v. Hamlin (2009) 170 Cal.App.4th 1412, 1457; People v. Jackson (2000) 77 Cal.App.4th 574, 580.) Section 243, subdivision (e)(1) provides: "When a battery is committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment." For purposes of this crime, a "battery" is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.)

Thus, felony spousal abuse requires a "traumatic condition," but misdemeanor battery on a spouse does not.

[Petitioner] contends that the "lack of any fresh visible injury" on V.B. as a result of the May 20, 2008, incident calls into question whether [petitioner] committed felony spousal abuse and, at the same time, constitutes substantial evidence supporting an instruction on misdemeanor battery of a spouse. [Petitioner] cites testimony of Officer Jacobo, an officer who responded to the scene on May 20, 2008. Officer Jacobo testified that he did not recall seeing any visible injuries on V.B.'s neck area, that he did not observe any injury on the front of V.B.'s neck, and that there was no "apparent injur[y]" on the back of V.B.'s neck. Officer Jacobo acknowledged that the "only thing visible that [he] could see was" the bruise on V.B.'s arm. As to the arm bruise, [petitioner] claims that there was no evidence fixing the age of the bruise. [Petitioner] further notes that V.B. did not seek medical treatment after the incident.

According to [petitioner], a reasonable jury could have found that V.B. did not sustain injuries resulting in a "traumatic condition." We are not persuaded. [Petitioner] ignores V.B.'s testimony, the photographic evidence, and the broad statutory definition of "traumatic condition."

V.B. testified in detail about the violent May 20, 2008, incident. She was questioned about the "pain" she experienced "as a result of what [petitioner] did on May 20th, 2008." V.B. explained that she felt pain in her neck, had "a bruise on [her] arm," and experienced "really bad headaches." Later in the trial, the

14

prosecution admitted into evidence several photographs of V.B., marked as People's exhibits 1 through 8. The prosecution then asked V.B. questions about the photographs.

Exhibits 1 through 4 were included in the record on appeal. According to V.B.'s testimony, exhibit 1 shows her left eye is "bruised, like swollen." V.B. stated that the photograph was taken on May 20, 2008, or possibly the day after.

Regarding exhibit 2, a closeup shot of the back of V.B.'s neck, V.B. explained that it showed "[t]he scratching. There is some red area where the scratch is on my neck."

V.B. testified that exhibit 3 depicted the bruise on her arm from the May 20, 2008, incident:

"[PROSECUTION:] And People's Exhibit 3?

"[V.B.:] Yes.

"[PROSECUTION:] And what are we looking at there?

"[V.B.:] That is where he had his elbow in my arm holding me down.

"[PROSECUTION:] Is that the bruise you described on your arm from May 20th, 2008?

"[V.B.:] Yes."

V.B. further testified that exhibit 4 was a closeup of the same bruise as depicted in exhibit 3.

The jury was shown those photographs, among other exhibits. In those photographs, the setting (a grayish wall in the background) and V.B.'s attire (a red shirt) are the same. Officer Jacobo acknowledged that he was present when V.B.'s injuries were photographed.

In light of V.B.'s testimony and the admitted photographs, there was ample evidence that V.B. sustained bruising to her eye and arm from the May 20, 2008, incident. Officer Jacobo confirmed that V.B. had bruising on her arm (he observed it), and in V.B.'s unrebutted testimony she specifically linked the bruising on her arm, as reflected in exhibit 3, to the May 20, 2008, incident. Further, Officer Jacobo testified that V.B. told him at the scene that the bruise on her arm, as depicted in exhibit 3, was caused during the altercation with [petitioner].

In his reply brief [petitioner] attempts to downplay the significance of V.B.'s arm bruise, calling it a "small bruise." However, a "traumatic condition" includes even a "minor" wound

> or external injury. (§ 273.5, subd. (c); Wilkins, supra, 14 Cal.App.4th at p. 771.)
>
> [Petitioner] also argues that the bruise on V.B.'s arm, as depicted in exhibit 3, appears "older," suggesting that it could have been caused by an earlier incident or occurrence. But neither [petitioner's] selective argument nor his speculation constitute the substantial evidence needed to warrant a lesser included offense instruction. (People v. Redd (2010) 48 Cal.4th 691, 733; People v. Mendoza (2000) 24 Cal.4th 130, 174.)
>
> The state of the evidence was such that a jury could not have reasonably doubted whether the elements of felony spousal abuse under section 273.5, subdivision (a) were proven. Accordingly, the trial court did not err by not instructing on misdemeanor battery of a spouse. (People v. Huggins (2006) 38 Cal.4th 175, 215–216.)

(People v. Amoako, slip op. at 13-18.)

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, the Supreme Court has not decided whether this rationale also extends to non-capital cases. The Ninth Circuit, like several other federal circuits, has declined to extend Beck to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding"). Accordingly, the decision of the California courts denying petitioner relief as to this claim was not contrary to United States Supreme Court authority as set forth in the Beck decision. Further, to find a constitutional right to a lesser included offense instruction here would require the application of a new rule of law in the context of a habeas petition, something the court cannot do under the holding in Teague v. Lane, 489 U.S. 288 (1989). See Solis, 219 F.3d at 929 (habeas relief for

1  failure to instruct on lesser included offense in non-capital case barred by Teague because it
2  would require the application of a new constitutional rule); Turner v. Marshall, 63 F.3d 807, 819
3  (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999) (en
4  banc) (same).

5          In any event, as noted by the state trial and appellate courts, the evidence
6  introduced at petitioner's trial was sufficient to support a conviction for felony spousal abuse.
7  Petitioner claims the victim sustained no visible injuries, and that the testimony of Officer Jacobo
8  supports his position.  However, photographs of V.B.'s injuries were admitted into evidence, and
9  V.B. testified as to the nature of her injuries, and also described her injuries as she viewed the
10 photographs while she was on the stand. (Reporter's Transcript ("RT") at 129, 174-78, 189.)
11 V.B. confirmed that she sustained the bruise during the altercation with petitioner.  (RT at 175.)
12 Officer Jacobo testified that he saw the bruise, and the record reflects that V.B. showed him the
13 bruise when he asked her whether she had sustained any injuries.  (RT 244-46.)  The testimony
14 of V.B. and Officer Jacobo concerning the bruise, and the photograph of the bruise, were
15 sufficient evidence under California law to constitute a "traumatic condition."  Cal. Penal Code
16 § 273.5.  "Section 273.5 is violated when the defendant inflicts even "minor" injury."  Wilkins,
17 14 Cal. App. 4th at 771.  But V.B. also testified that petitioner choked her, and that as a result her
18 throat hurt for a week after the altercation, it was hard to swallow, and it hurt to eat and drink.
19 (RT at 129.)  Plaintiff testified she began having "bad headaches."  (Id.)  As set forth above, V.B.
20 also testified that she sustained scratches on her neck, and a bruised eye.  (RT at 174-75.)

21         Under the circumstances presented here, the trial court did not violate petitioner's
22 federal constitutional rights in failing to give a jury instruction on the lesser included offense of
23 misdemeanor battery.  Accordingly, petitioner is not entitled to relief on this claim.

24 VI.  Conclusion

25         For all of the above reasons, the undersigned denies petitioner's application for a
26 writ of habeas corpus.

Before petitioner can appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).

For the reasons set forth above, the undersigned finds that petitioner has not made a showing of a substantial showing of the denial of a constitutional right.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a petition for writ of habeas corpus is denied; and

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

DATED:  April 1, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

amoa1130.157